**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE VALENTÍN MARRERO, EMERITA MERCADO ROMAN, PERSONALLY, AS MEMBERS OF THEIR CONJUGAL PARTNERSHIP AND ON BEHALF OF THEIR SON GAJVM | **CIVIL NO.** 18-1286(RAM) |
| **Plaintiffs** | |
| v. | |
| COMMONWEALTH OF PUERTO RICO; DEPARTMENT OF EDUCATION OF THE COMMONWEALTH OF P.R. | |
| **Defendants** | |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

Pending before the Court are (1) José Valentín-Marrero and Emerita Mercado-Roman's, (collectively, "Plaintiffs" or "Parents") *Motion for Summary Judgment* and (2) the Commonwealth of Puerto Rico and the Department of Education of the Commonwealth of Puerto Rico, ("collectively, Defendants") Cross-*Motion for Summary Judgment* (Docket Nos. 167 and 184 respectively). Having considered the parties' briefs, the evidence on the record and the applicable law, the Court hereby **DENIES in part** Plaintiffs' *Motion for Summary Judgment* at Docket No. 167 and **GRANTS in part** Defendants' *Motion for Summary Judgment* at Docket No. 184.

## I.   PROCEDURAL BACKGROUND

On May 11, 2018, Plaintiffs brought the present action against the Commonwealth of Puerto Rico and the Department of Education of the Commonwealth of Puerto Rico ("DOE") on behalf of their son GAJVM.   They sought injunctive relief, reimbursement of costs, and attorney's fees for alleged violations of the Individuals with Disabilities Education Act ("IDEA" or "Act"), 20 U.S.C. §§ 100 *et seq.* (Docket No. 1).   Particularly, Plaintiffs requested an injunction ordering the DOE to prepare a 2018-2019 Individualized Education Program ("IEP") for GAJVM, a minor registered with the DOE as a student with disabilities, that incorporates Applied Behavior Analysis ("ABA") services.[1] Id. at 3, 11-13. That same day, Plaintiffs filed a *Motion for Preliminary Injunction* reiterating this request. (Docket No. 2).

Defendants filed two motions to dismiss for failure to exhaust administrative remedies before filing their *Complaint* and  lack of jurisdiction. (Docket Nos. 11 and 35). The then presiding District Judge rejected DOE's arguments and denied both motions. (Docket No. 63).

---

[1] "Applied Behavior Analysis (ABA) is a type of therapy that focuses on improving specific behaviors, such as social skills, communication, reading, and academics as well as adaptive learning skills, such as fine motor dexterity, hygiene, grooming, domestic capabilities, punctuality, and job competence. ABA is effective for children and adults with psychological disorders in a variety of settings, including schools, workplaces, homes, and clinics. It has also been shown that consistent ABA can significantly improve behaviors and skills and decrease the need for special services." *See Applied Behavior Analysis,* Psychology Today*,* https://www.psychologytoday.com /us/therapy-types/applied-behavior-analysis (last visited on August 17, 2020).

Following a Preliminary Injunction Hearing held on September 13, 2018, a Magistrate Judge issued a Report and Recommendation ("R&R") granting in part Plaintiffs' request for injunctive relief. (Docket No. 55). Plaintiffs timely objected to the R&R. (Docket No. 58). On November 13, 2018, the Court issued an Order adopting the R&R's background and conclusion but setting aside its conclusion and granting Plaintiffs' *Motion for Preliminary Injunction*. (Docket No. 62). Specifically, the Court ordered the parties to "convene a COMPU meeting on or before December 14, 2018 and prepare a new IEP for the remainder of the 2018-2019 school year designed by an ABA-certified provider that applies ABA services throughout the educational process." Id. at 7.

On December 19, 2018, Plaintiffs filed a *Motion in Compliance with Order and Request for Finding of Contempt*, in which they alleged that the DOE did not comply with the Court's November 13, 2018 order and requested that Defendants be found in contempt of Court. (Docket No. 66). Additionally, Plaintiffs presented an *Urgent Motion Requesting Order* seeking that GAJVM be placed at the Government's expense at Starbright Academy, a private school in Ponce, Puerto Rico. (Docket No. 69).

On January 28, 2019, the Court issued an order (1) holding in abeyance Plaintiffs' request for contempt and (2) denying Plaintiffs' request that GAJVM be placed at Starbright Academy. (Docket No. 80). The Court ordered the parties to convene another

COMPU meeting by February 25, 2019 and prepare a new IEP for the remainder of the 2018-2019 school year. Id. Subsequently, both parties filed separate motions notifying the Court of the DOE's compliance, or lack thereof, with the Order at Docket No. 80. (Docket Nos. 88 and 90). On May 30, 2019, Plaintiffs filed an *Urgent Motion Requesting Order* requesting that the Court order the DOE to fully implement the 2017-2018 IEP prior to drafting an IEP for 2019-2020 or to design a new IEP (for either 2018-2019 or 2019-2020) under the Court's supervision and in compliance with previous orders. (Docket No. 101 at 8).

This case was reassigned to the undersigned on June 20, 2019. (Docket No. 103). Pursuant to this Court's order, Plaintiffs filed an *Amended Complaint* on September 6, 2019 (Docket No. 115) and Defendants filed their *Answer* to the same on December 24, 2019 (Docket No. 138). The Court held various settlement conferences with the parties hoping that an agreement could be reached and GAJVM could receive an academic placement for the remainder of the 2019-2020 academic year. (Docket Nos. 142; 143). The Court also cautioned the parties that a reasonable settlement was the most expedient and efficient way to resolve the dispute. The settlement negotiations proved to be unsuccessful. Accordingly, the Court set a bench trial date for July 15, 2020, to resolve the case at bar prior to the commencement of the 2020-2021 academic year. (Docket

No. 183). That trial date was rescheduled for the month of August 5, 2020 at Plaintiffs' request. (Docket No. 202).

On June 15, 2020, Plaintiffs filed their *Motion for Summary Judgment*. (Docket No. 167). Defendants filed a *Response in Opposition* (Docket No. 187) on June 29, 2020 and Plaintiffs filed a *Reply to Defendants' Response in Opposition* (Docket No. 206). Subsequently, Plaintiffs filed a *Motion Supplementing Request for Relief*, clarifying their request for compensatory services to be extended under IDEA until GAJVM is 22 years old. (Docket No. 243).

Defendants in turn filed their own *Motion for Summary Judgment* on June 29, 2020. (Docket No. 184). In response, Plaintiffs filed an *Opposition* (Docket No. 221) and a *Motion Supplementing Response in Opposition* (Docket No. 231). Defendants also filed a *Reply to Plaintiff's [sic] Response Statements of Uncontested Material Facts and Response to Additional Statements of Uncontested Material Facts* (Docket No. 239) and Plaintiffs filed a *Sur-Reply* (Docket No. 250).

The Court ultimately vacated the bench trial due to the dispositive motions and the parties' view that a trial was not necessary. (Docket No. 248).

## II.  APPLICABLE LAW

### A. The Individuals with Disabilities Education Act

The IDEA allocates federal funding to States in exchange for their commitment to provide a "'free appropriate public

education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C.A. § 1412(a)(1)(A)). *See also* C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 284 (1st Cir. 2008) ("Five Town") ("Congress designed the IDEA as part of an effort to help states provide educational services to disabled children.").

The Act defines a FAPE as:

> [**S]pecial education and related services that**--
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required […]

20 U.S.C.A. §§ 1401(9). In other words, a FAPE encompasses "both **'instruction'** tailored to meet a child's 'unique needs' and sufficient **'supportive services'** to permit the child to benefit from that instruction." Fry, 137 S. Ct. at 748-49 (quoting 20 U.S.C.A. §§ 1401(9), (26), (29)) (emphasis added).

"The primary vehicle for delivery of a FAPE is the child's [Individualized Education Plan or] IEP." Lessard v. Wilton Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 23 (1st Cir. 2008). States are tasked with "the obligatory creation of an IEP for each student, reviewed annually and revised when necessary." Nickerson-

Reti v. Lexington Pub. Sch., 893 F. Supp. 2d 276, 285 (D. Mass. 2012), aff'd (June 19, 2013) (citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 181-82 (1982)). IEPs are "created by a team of individuals including the student's parents and teacher, designated specialists, and a representative of the school." Id. (citing 20 U.S.C.A. § 1414 (d)(1)(B). The Supreme Court has emphasized that the **core** of the IDEA is the **cooperative and collaborative** IEP process that it establishes between parents and schools. *See* Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005). Specifically, the IEP must include: (1) the child's levels of academic achievement and functional performance; (2) academic and functional goals; (3) a description of how the child's progress towards said goals will be measured; (4) the special education and related services that will be provided; and (5) any applicable accommodations. *See* 20 U.S.C.A. § 1414 (d)(1)(A).

If the parties cannot agree to a sufficient IEP, "the child's parents may challenge either the school system's handling of the IEP process or the substantive adequacy of the IEP itself by demanding an administrative due process hearing before a designated state educational agency." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35 (1st Cir. 2012) (citing 20 U.S.C. § 1415(f)(1)(A)). Likewise, the public-school system can "test the validity of a proposed IEP or […] challenge an existing IEP as

over-accommodating." Id. (citing Schaffer, 546 U.S. at 53). In either case, **the burden of persuasion "lies with the party challenging the IEP.**" Id. (emphasis added).

While there is "no mechanical checklist by which an inquiring court can determine the proper content of an IEP […] [o]ne thing is clear: the substance of an IEP must be something different than the normal school curriculum and something more than a generic, one-size-fits-all program for children with special needs." Lessard, 518 F.3d at 23. The First Circuit has repeatedly held that an IEP must be **individually designed** and "reasonably calculated to confer a **meaningful educational benefit**" in consideration with the student's **particular needs and circumstances**. See Johnson v. Bos. Pub. Sch., 906 F.3d 182, 194-95 (1st Cir. 2018) (quoting D.B. ex rel. Elizabeth B., 675 F.3d at 34) (emphasis added).

However, "the obligation to devise a custom-tailored IEP does not imply that a disabled child is entitled to the maximum educational benefit possible." Lessard, 518 F.3d at 23. In other words, the IEP need not provide "an ideal level of educational benefit, in order to survive judicial scrutiny." Id. at 24. Instead, "[t]he Act sets more modest goals: it emphasizes an **appropriate**, rather than an ideal, **education**; it requires an **adequate**, rather than an optimal, **IEP**." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993) (emphasis added).

B. **Private School Placement**

To comply with IDEA's requirements, states are *authorized* to place children with disabilities in private schools so that they can receive special education and related services in accordance with their IEP, at no cost to the parents. *See* 2000 U.S.C.A. § 1412(a)(10)(B)(i). Nevertheless, this does not mean that local governments must, or even should, bear the expense of private school placement at the request of the student's parents. The Act specifies that local educational agencies are **not** required to pay for the cost of special education and related services at a private school "**if that agency made a free appropriate public education available to the child and the parents _elected_ to place the child in such private school or facility.**" Id. § 1412(a)(10)(C)(i) (emphasis added). On the other hand, if a court or administrative hearing officer "finds that the school district **did not make a FAPE available to the child in a timely manner**, IDEA allows parents to place their disabled child in a private school and receive reimbursement." Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 26 (1st Cir. 2002) (citing 2000 § U.S.C.A. 1412(a)(10)(C)(ii)). Therefore, parents would be "entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Florence Cty. Sch. Dist. Four v. Carter By & Through Carter,

510 U.S. 7, 15 (1993) ("Carter"). Private school placement is considered proper under the IDEA "when a public school system has defaulted on its obligations under the Act" and "the private school is reasonably calculated to enable the child to receive educational benefits." Id. at 11. (internal quotations omitted). In accordance with Carter, "plaintiffs are entitled to reimbursement of private school tuition if (1) the IEP was not 'reasonably calculated to enable the child to receive educational benefits,' (2) 'the private schooling obtained by the parents is appropriate to the child's needs,' and (3) equitable considerations support the plaintiffs' claim." D.B. v. New York City Dep't of Educ., 966 F. Supp. 2d 315, 327 (S.D.N.Y. 2013) (quoting T.Y. v. New York City Dep't of Educ., 584 F.3d, 412, 417 (2d Cir. 2009)).

The Supreme Court has cautioned that "**parents who unilaterally change their child's placement** during the pendency of review proceedings, **without the consent of state or local school officials, do so at their own financial risk**." Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 373-74 (1985) (emphasis added). Notably, even when reimbursement is proper, the amount can be "**reduced or denied** […] upon a judicial finding of unreasonableness with respect to actions taken by the parents." 2000 U.S.C.A. § 1412(a)(10)(C)(iii)(III) (emphasis added).

### C. **Compensatory Education**

Compensatory education is another remedy available for an insufficient IEP. The First Circuit has defined compensatory education as "a surrogate for the warranted education that a disabled child may have missed during periods when [their] **IEP was so inappropriate that [they were] effectively denied a FAPE**." Five Town, 513 F.3d at 290 (citing Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., 321 F.3d 9, 18 (1st Cir.2003)). Even under such circumstances "compensatory education is not an automatic entitlement but, rather, a discretionary remedy for nonfeasance or misfeasance in connection with a school system's obligations under the IDEA." Id. (citing Pihl v. Mass. Dep't of Educ., 9 F.3d 184, 188 (1st Cir.1993)).

### D. **Judicial Actions and Summary Judgment under the IDEA**

The IDEA establishes terms for presenting an administrative complaint under the Act and creates a right to bring a civil action for any party aggrieved by the findings or decision of the administrative proceedings. See 20 U.S.C.A. §§ 1415(b)(6)(a), 1415(i)(2)(A). In any civil action brought pursuant to IDEA, the presiding court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.A. § 1415(i)(2)(C).

Because the Act authorizes courts to supplement the administrative record and ultimately rule based on the preponderance of evidence, "judicial review in IDEA cases differs substantially from judicial review of other agency actions." Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 85 (1st Cir. 2012) (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993)); see also Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C.Cir. 1988). Accordingly, a district court's decision in an IDEA claim may be aptly described as a "judgment on the record." Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313 (11th Cir. 2003) (quoting Beth B. v. Van Clay, 282 F.3d 493, 496 n. 2 (7th Cir. 2002)). See also Ojai, 4 F.3d at 1472 (finding that in IDEA cases, district courts "essentially conduct[] a bench trial based on a stipulated record"); Morales v. Puerto Rico, 2005 WL 8168437, at *3 (D.P.R. 2005) (holding that instead of a jury trial, "plaintiffs' IDEA claims will be decided by the court based upon the administrative record.").

In IDEA cases, "[i]nstead of dispute resolution, a motion for summary judgment can serve as an aid to the court within a statutory scheme whose purpose is to ensure that children with disabilities receive the educational benefits to which they are entitled." T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009). Therefore, "a motion for summary judgment in

an IDEA case is simply a vehicle for deciding the relevant issues,
**and the non-moving party is not entitled to the usual inferences
in its favor.**" Sebastian M., 685 F.3d at 84-85 (citing Lillbask ex
rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n. 3 (2d
Cir. 2005)) (emphasis added). Moreover, **the presence of disputed
issues of fact does not preclude the award of summary judgment.**
Id. at 85. *See also* Loren F. ex rel. Fisher, 349 F.3d at 1313
(holding that in IDEA cases, summary judgment is "appropriate even
when facts are in dispute and is based on preponderance of the
evidence.").

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed the **totality** of
the case record, including *Plaintiffs' Statement of Uncontested
Facts in Support of Motion for Summary Judgment* (Docket No. 167-
1), *Defendants' Response to Plaintiffs' Statements of Uncontested
Material Facts in Support of Motion for Summary Judgment* (Docket
No. 187-1), Defendants' *Statement of Uncontested Material Fact in
Support of Motion for Summary Judgment* (Docket No. 184-1) and
*Plaintiffs' response to Defendants Statement of Uncontested Facts
in Support of Motion for Summary Judgment and Additional Statements
of Uncontested Facts* (Docket No. 221-1). After **only crediting
material facts** that are **properly supported by the record,** the Court
makes the following findings of fact:

A. **Plaintiffs' Administrative Complaint**

1.   GAJVM is a minor registered with the DOE as a student with
     disabilities with registration number 0000-2302 in the DOE
     Arecibo District. (Docket Nos. 167-1 ¶ 1; 184-1 at 2).

2.   GAJVM has been diagnosed with autism and is not able to
     perform socially or educationally without extensive
     assistance and guidance. (Docket No. 167-1 ¶ 2).

3.   José Valentín ("Mr. Valentin") is the father of GAJVM and
     his legal guardian. Id. ¶ 3.

4.   Emerita Mercado ("Ms. Mercado") is the mother of GAJVM and
     his legal guardian. Id. ¶ 4.

5.   As a student with disabilities under the IDEA, GAJVM is
     qualified by federal and state law to participate in
     the academic and related services programs of the public
     education system administered by the DOE. Id. ¶ 5.

6.   As a recipient of federal funding, the DOE is responsible
     for providing a free appropriate public education suited
     to GAJVM's particular needs. Id. ¶ 6.

7.   On August 22, 2017, Plaintiffs filed an
     administrative complaint, Claim No. 2017-040-006, with
     the Special Education Administrative Forum of the DOE
     requesting that the DOE provide GAJVM with educational
     services through a private entity. Id. ¶ 7.

8.    On February 12, 2018, Administrative Judge Rodríguez Arbona

      issued a Resolution and Order requiring the following:

      1. The Department of Education is hereby ordered to
      purchase educational and related services to
      benefit the complainant student for the time
      remaining in school year 2017-2018 at the private
      educational institution. Said purchase must be
      carried out by immediately including the
      complainant student in the existing contract
      between the educational agency and the private
      school.

      2. The Department of Education is hereby ordered
      to, on or before February 22, 2018, coordinate a
      Programming and Placement Committee Meeting at the
      private school. The purpose of the Programming and
      Placement Committee Meeting will be to review the
      student's IEP for school year 2016-2017, prepare
      the IEP for school year 2017-2018, and analyze and
      discuss any matter that may be necessary regarding
      the provision of educational and related services
      that the student may require to receive a free,
      appropriate, public education.

      3. The Department of Education is hereby ordered to
      hold a Programming and Placement Committee Meeting
      at the private school on or before April 6, 2018,
      in order to prepare the complainant student's IEP
      for school year 2018-2019 and evaluate possible
      placement alternatives for its implementation.

      4. The Complaint herein is hereby CLOSED AND FILED.

(Docket Nos. 167-1 ¶¶ 8-12; 184-1 ¶ 5; 184-2 at 8).

9.    GAJVM attended the private school CADEI Bilingual School

      ("CADEI") during part of the 2017-2018 academic year and

      was at CADEI when the administrative Resolution and Order

      was issued on February 12, 2018. (Docket No. 184-1 ¶ 8).

10.  After the administrative complaint number 2017-040-006 was closed and filed, there is no record of any other complaint filed by GAJVM with the Associate Secretariat of Special Education. (Docket No. 184-1 ¶ 7)

**B. <u>The preparation and approval of the 2017-2018 IEP</u>**

11.  The approval of the IEP for 2017-2018 was delayed. (Docket No. 167-1 ¶ 13).

12.  However, pursuant to the administrative Resolution and Order, the Programing and Placement Special Education Committee ("COMPU" for its Spanish acronym) held meetings to discuss GAJVM's 2017-2018 IEP on February 22, March 8, March 15 and March 21, 2018. (Docket Nos. 184-1 ¶¶ 16, 211-2).

13.  At each COMPU meeting, Mr. Valentín and Ms. Marrero were given the Parents' Rights in Compendium and were read their rights, including that:

> (5) You have the right to participate in meetings with respect to the identification, placement and/or evaluation or provision of free appropriate public education for the child; […] (16) You have the right to participate in the preparation of your child's IEP; […] (18) You have the right to accept or reject all or part of your child's IEP or placement in the Special Education service; (19) You have the right to have your child placed in a private school, at the expense of the government, when it is found that the public education system does not have an educational alternative that meets your child's needs […]

(Docket Nos. 184-1 ¶ 17; 211-2; 184-6; 211-3; 184-8).

14.  At the March 8, 2018 COMPU meeting, GAJVM's parents handed
     in several of GAJVM's evaluations to be reviewed, namely:
     (1) occupational therapy, dated November 12, 2016; (2)
     psychometric, dated May 11, 2017; (3) functional of the
     behavior, dated April 29, 2016; and (4) psychological,
     dated January 19, 2012. GAJVM's parents requested that said
     evaluations be copied and incorporated into his student
     file. (Docket No. 184-1 ¶¶ 22-23).

15.  GAJVM's parents were informed that neither the CADEI School
     nor the DOE have occupational therapists who are certified
     in sensory focus. Therefore, occupational therapy with
     sensory focus must be provided through provisional remedy.
     (Docket Nos. 184-1 ¶¶ 24-25; 184-6 at 3).

16.  The COMPU agreed that occupational therapy with sensory
     focus shall be provided through the Provisional Remedy
     Office. (Docket Nos. 184-1 ¶ 27; 184-6 at 5).

17.  At the March 15, 2018 COMPU meeting, Dr. Amones-Gaud, the
     Center of Services of Special Education ("CSEE") Arecibo
     Director, stated that she consulted the Assistant Secretary
     of the Special Education Program, who recommended that the
     procedures for requesting technical assistance be followed
     and that form 07-B be filled out. (Docket Nos. 184-1 ¶ 36;
     211-3 at 4).

18. The parties ultimately approved the 2017-2018 IEP for GAJVM
    at the March 21, 2018 COMPU meeting held at the CSEE
    Arecibo. (Docket Nos. 167-1 ¶¶ 13, 29; 184-1 ¶ 38).

19. The minutes of the March 21, 2018 COMPU meeting reflect
    that the parties added a description of GAJVM's diagnoses,
    medical services and functioning to the 2017-2018 IEP.
    (Docket Nos. 184-1 ¶¶ 44-45).

20. The participants at said COMPU meeting discussed that CADEI
    Bilingual School where GAJVM was enrolled did not comply
    with the facilities, services and trained staff required
    by the 2017-2018 IEP. (Docket Nos. 167-1 ¶ 19; 184-8 at
    4).

21. The need for ABA services was recorded in the minutes of
    the March 21, 2018 COMPU meeting. The participants of said
    meeting, which included DOE representatives, accepted that
    GAJVM's special education record required ABA services.
    (Docket No. 167-1 ¶¶ 15-16).

22. At the COMPU meeting, the parties reached several
    agreements, including that the recommended placement for
    GAJVM consists of "an individualized education service
    (1:1), by a special education teacher, specialized in
    autism, with services assistant and with a focus of Applied
    Behavior Analysis (ABA-Applied Analysis of the Conduct),

in the educational and theraputical [sic] area." (Docket Nos. 167-1 ¶ 28; 184-8 at 5; 184-1 ¶ 51).

23. The 2017-2018 IEP identifies that in accordance with GAJVM's diagnosis, the Applied Behavior Analysis ("ABA") therapeutic focus is the strategy or method that shall be utilized. (Docket No. 167-3 at 2).

24. Specifically, the 2017-2018 IEP, which was approved by all the parties, states the following:

> **A. If the student shows inappropriate conduct that prevents his learning and progress and that of others:**
> 1. Describe the conduct to be modified: GAJVM presents difficulty to follow the routine of the classroom, principally by rejecting activities that are not of his interest, like those of reading, writing and mathematics. He manifests to be bothered with his situation by means of aggressive conducts such as: hitting an adult, pinching, pushing the hand, throwing materials, breaking materials, biting, kicking, squeezing others, etc. He avoids grabbing the pencil, crayons and other materials for writing, drawing or tracing. Utilizes the maladaptive conduct to avoid activities that are not of his interest. He may hit his fellow students.
> 2. Describe the strategies or methods that shall be utilized to modify the identified conduct: It's necessary to utilize strategies based on specialized models, in accordance to the diagnosis presented by [GAJVM]. The ABA focus shall be applied, designed by a certified specialist, in addition to integrating visual schemes, such as PECS. The plan to be followed shall be designed, by means of discrete steps, in the work of maladaptive conduct presented by [GAJVM]. Structured activities, with visual-concrete keys that provide the necessary guide to [GAJVM] so that he understands what is expected of him, shall be used. There shall be utilized constant supervision,

modeling,   consistent   redirection,   verbal
reinforcements, verbal and tangible reinforcements
and loss of privileges/reinforcements. GAJVM can
select the reinforcements. There shall be utilized
the strategy of work by means of discrete steps
that  guide  and  mold  his  conduct,  utilizing
immediate  reinforcement  to  the  desired  conduct.
GAJVM  shall  be  exposed  to  activities  of  poor
interest by means of discrete steps and utilizing
tasks which e masters, increasing the difficulty
bit by bit. Work shall be done with strategies to
improve  communications,  lower  his  level  of
frustration and keep him with a positive attitude
regarding  school  and  learning.  Concrete  and
different strategies and activities hall be used.
Tasks that GAJVM likes will be combined with others
of greater challenge. The application of the **ABA
must be applied throughout the entire educational
process** (with backing from a professional certified
in ABA). In the application of the ABA, the progress
and change in [GAJVM] shall be reviewed by means of
the  specific  measurement  of  his  conduct,  which
shall establish the basis to re-define the goals
drawn and the strategies utilized, every time that
it  is  necessary.  It's  necessary  that  the
psychologist offer the necessary consulting to the
teacher and assistant, in addition to participating
in the development of the applied ABA. Among the
objectives to be worked, the development in [GAJVM]
of **self-control, expression, handling of emotions
and others** must be included. It's important to work
in  the  development  of  adaptive  behaviors  that
replace the maladaptive ones. The process is begun
with a functional analysis of the conduct. It's
directed toward functionality, spontaneity and the
generalization.

(Docket No. 167-3 at 3) (emphasis in original).

25. Section V(a) of the 2017-2018 IEP, which details the

services program states that for the Socio-Emotional area,

"a variety of strategies, including specialized ones, such

as ABA" shall be used. (Docket Nos. 184-1 ¶ 47; 211-4 at 4).

26. Recommendations made in the 2017-2018 IEP were based in part on the Functional Evaluation of Conduct prepared by Mrs. Marta Riviere ("Mrs. Riviere"). (Docket No. 167-1 ¶ 25).

27. The Functional Evaluation of Conduct Report prepared by Mrs. Riviere for GAJVM, dated May 1, 2016, recommends that "[d]ue to the seriousness of the behaviors, ABA therapies are recommended on a full-time basis (8-2:00 pm) at school." (Docket Nos. 167-1 ¶ 26; 167-5).

28. GAJVM's parents accepted the 2017-2018 IEP in part because they understand that ABA's therapeutic focus must be specifically included. (Docket No. 184-1 ¶ 53).

29. The minutes of the March 22, 2018 meeting reflect that the COMPU, including Mr. Valentín and Ms. Mercado, understood and accepted all the matters discussed and agreed upon. Id. ¶ 54.

**C. The Proposed 2018-2019 IEP**

30. Pursuant to the administrative order mandating that the 2018-2019 IEP be prepared by April 6, 2018, a COMPU meeting was held on April 5, 2018 at the CSEE Lares. (Docket Nos. 167-1 ¶ 20; 184-1 ¶ 55).

31. At the April 5, 2018 COMPU meeting, the DOE's
    representatives presented a draft of the IEP for 2018-2019
    and requested that said proposal be discussed with GAJVM's
    parents. (Docket Nos. 167-1 ¶ 21; 184-1 ¶¶ 61-62).

32. Mr. Valentín and Ms. Mercado request that the behavioral
    area approved in the 2017-2018 IEP, where it is established
    that ABA Therapeutic Focus would be applied in the
    educative and therapeutic areas, be annexed to the 2018-
    2019 IEP. The DOE rejected that it be annexed, and instead
    offered to provide the stipulated behavior modification
    plan in the IEP proposal. (Docket No. 184-1 ¶ 63).

33. DOE representatives offered a one-on-one classroom at the
    Angelita Delgado Sella School with a teacher specialized
    in autism, a special services assistant for GAJVM,
    transportation provided by carrier, and comprehensive
    therapy in the classroom as a provisional remedy. (Docket
    Nos. 167-8 ¶ 27; 211-5 at 5).

34. Ms. Mercado indicates that said placement had been
    previously offered and rejected in a previous, August 24,
    2017 meeting. (Docket No. 167-8 ¶ 28).

35. GAJVM's parents, their expert psychologist and advocate
    opposed the totality of DOE's proposed 2018-2019 IEP
    because it was not appropriate for the student's needs and
    demanded that a new one be prepared incorporating ABA

services in a location with suitable facilities. (Docket Nos. 167-1 ¶ 24; 167-8 ¶¶ 29, 7; 184-1 ¶ 68).

36. The draft of the 2018-2019 IEP was never approved by the COMPU and never became a valid or enforceable document. (Docket No. 167-1 ¶ 18).

   **D. Plaintiffs' Civil Action**

37. On May 11, 2018, Plaintiffs filed the present *Complaint* requesting, among other things, that the Court:

> 1.Issue a preliminary injunction ordering defendant to immediately prepare an IEP 2018-19 which is compliant with the law and provides the services that the DOE has previously accepted, including ABA educational services and therapies.
>
> 2. Issue a preliminary injunction ordering defendant to refrain from recommending locations for services that do not presently comply with the recommended ABA services. Instead, defendants should be ordered to only choose services currently complaint with these ABA requirements, including private providers with qualified personnel, whose costs shall be borne by the DOE as provided by law. […]

(Docket No. 1 at 11-12).

38. At the time the *Complaint* was filed, May 11, 2018, GAJVM was receiving educational services at CADEI School. (Docket No. 184-1 ¶ 3).

39. On October 4, 2018, the Hon. Magistrate Judge Bruce J. McGiverin issued a Report and Recommendation finding that preliminary injunctive relief should be granted in part and recommended that the Court order Defendants:

> (1) to place GAJVM in the Star-Link program at the
> Angelita Delgado Sella School in Lares; (2) to
> convene a COMPU meeting on or before November 1,
> 2018 at the School in order to analyze and discuss
> any matter that may be necessary regarding the
> provision of educational and therapeutic services
> that GAJVM may require to receive a free
> appropriate public education; (3) to prepare at
> that COMPU meeting a new IEP for the remainder of
> the 2018-19 school year to be submitted to this
> court on or before November 15, 2018; (4) to ensure
> that GAJVM's instructors are furnished with
> information on how to request support from the
> Star-Link program director as well as the names and
> contact information for Star Autism support members
> who are Board Certified Behavior Analysts.

(Docket No. 55 at 11).

40. On October 11, 2018, the DOE summoned the plaintiffs for a
    COMPU meeting. On October 19, 2018, Ms. Mercado responded
    via e-mail that she consulted with her attorney, Attorney
    Borrés, and he instructed her to postpone the COMPU meeting
    because he was going to object to the Magistrate Judge's
    R&R. (Docket No. 184-1 ¶ 73).

41. Plaintiffs filed their objections to the Report and
    Recommendation on October 18, 2018. (Docket No. 58).

42. On November 13, 2018, the Court entered an Order adopting
    the R&R's Background and Discussion but setting aside its
    conclusion, finding that "[b]y proposing an IEP for the
    2018-2019 school year without ABA services it agreed were
    necessary to provide plaintiff's child a FAPE just two
    weeks before, the DOE materially failed to implement the

child's IEP and violated IDEA." (Docket Nos. 184-1 ¶¶ 74-75; 62 at 6-7).

43. Accordingly, the Court ordered:

> [T]he parties to convene a COMPU meeting on or before December 14, 2018 and prepare a new IEP for the remainder of the 2018-2019 school year designed by an ABA certified provider that applies ABA services throughout the educational process. If there are no ABA certified professionals available in Puerto Rico to design plaintiff's IEP for 2018-2019, the DOE SHALL provide one at its expense. In designing the new 2018-2019 IEP, the DOE may propose that the ABA certified professional use services it currently provides to disabled students. But the DOE is admonished that the final plan must be designed by an ABA certified professional, apply ABA services, and count with the professional's backing throughout the education process so that plaintiffs' child may receive a FAPE.

(Docket Nos. 184-1 ¶ 78; 62 at 7).

### E. December 2018 Meetings to prepare the 2018-2019 IEP

44. On December 6, 2018, GAJVM's parents were invited for a COMPU meeting to develop an IEP and were offered three dates: December 12, 13, or 14 at the Angelita Delgado Sellas school in Lares. (Docket No. 184-1 ¶ 79).

45. On December 7, 2018, the multidisciplinary team met at the Angelita Delgado Sellas school to attend to GAJVM's case, prepare the Behavior Intervention Plan and align the student's IEP with ABA. Id. ¶ 80.

46. The participants of the multidisciplinary team are: Joan M. Rivera-Toro (Board Certified Behavior Analyst BCBA),

Kiomary Ramos Bonilla (Star/Links coach), Yajaira Rivera Muñiz (Special Education Teacher-Autism), Maribel Méndez Rodríguez (Special Services Assistant for the student), María Lugo (Social Worker), and Mildred Acevedo-Concepción (Special Education Facilitator for the Municipality of Lares). Id. ¶ 81.

47. At the meeting, the team evaluated the strategies and curriculum of the DOE, including the LINKS curriculum, and an adaptation was made to GAJVM's needs aligning them in the subject matters of Mathematics, Spanish, Science and English. (Docket No. 184-1 ¶ 82; 184-14).

48. In addition to developing and discussing the techniques and strategies for the handling of GAJVM's behavior in alignment with the ABA program and LINKS, the 2018-2019 IEP was modified based on the recommendations of the multidisciplinary team. (Docket No. 184-1 ¶ 83; 184-14).

49. On December 12, 2018, the DOE invited GAJVM's parents to a COMPU meeting scheduled for December 13, 2018 at the CSEE Arecibo at 9:30 a.m. (Docket No. 184-1 ¶ 84).

50. On December 13, 2018, a COMPU meeting was held at the CSEE Arecibo to discuss the draft IEP prepared by the multidisciplinary team on December 7, 2018. (Docket No. 184-1 ¶¶ 85-86; 211-6).

51. GAJVM's parents objected claiming they were not invited to the multidisciplinary meeting and that there was representation from the Star Link program, namely Prof. Kiomary Ramos. (Docket No. 184-1 ¶ 87; 211-6 at 1-3).

52. The Parents were given a copy of the minutes of the multidisciplinary meeting held on December 7, 2018 along with the Behavioral Intervention Plan and the IEP aligned with ABA. (Docket No. 184-1 ¶ 90; 211-6 at 2).

53. ABA-certified specialist Joan M. Rivera-Toro ("Rivera-Toro") was available for the December 13, 2018 COMPU meeting via telephone. However, the Parents did not agree to discuss the IEP draft because they believed that as the specialist, Rivera-Toro should be present at the meeting. (Docket No. 184-1 ¶ 89; 211-6 at 3).

54. GAJVM's parents state that they consider Starbright Academy in Ponce as an alternative placement that addresses the student's needs. (Docket No. 184-1 ¶ 93; 211-6 at 3).

55. The DOE reiterates that they believe the draft IEP prepared by ABA-certified specialist Rivera-Toro provides a free and appropriate public placement and complies with the Court's order. (Docket No. 211-6 at 3).

56. Following the December 13, 2018 COMPU meeting, Plaintiffs filed a motion requesting that Defendants be found in contempt of Court for proposing Star Link services and for

holding a COMPU meeting without the presence of an ABA-certified specialist. (Docket No. 66 at 14-15).

57.  Plaintiffs filed an additional motion asking the Court to order the DOE to provide GAJVM with an educational placement at the Starbright Academy. (Docket No. 69).

58.  On January 28, 2019, the Court held in abeyance Plaintiffs' request that the DOE be found in contempt stating:

> The parties are ORDERED to convene another COMPU meeting NO LATER THAN FEBRUARY 25, 2019 on a date when both Joan Rivera Toro ("Mrs. Rivera") and plaintiffs can physically attend the same. During the meeting, the IEP team SHALL prepare a new IEP for the remainder of the 2018-2019 school year designed by Joan Rivera Toro, that applies ABA services throughout the educational process, in conjunction with plaintiffs as they are essential members of the IEP team. Mrs. Rivera SHALL evaluate GAJVM and conduct a functional analysis on conduct before a new IEP is designed.
>
> Defendants are warned that they cannot solely implement the Star-Link program or adjust/align the program to GAJVM. However, plaintiffs are admonished that Mrs. Rivera may propose the use of services currently provided by the DOE to disabled students in designing the new IEP, including those used in the Star Link program.

(Docket No. 80 at 5).

59.  Furthermore, the Court denied Plaintiffs' request that GAJVM be placed at Starbright Academy at the Government's expense, finding that:

> The Department of Education's definition of 'placement' in 34 C.F.R. § 300.116(a)-(b) "indicate that the school district must, in some fashion, approve of the placement decision and that the

> parents cannot unilaterally decide upon which
> school will serve as the child's 'placement.'" N.W.
> ex rel. J.W. v. Boone Cty. Bd. of Educ., 763 F.3d
> 611, 617 (6th Cir. 2014) (finding that a private
> school not approved by school district does not
> qualify as the 'current educational placement' and
> reversing order requiring school district to
> reimburse parents for costs of placing child in
> said school).

Id. at 4.

**F. Rivera-Toro's Functional Behavior Assessment Report**

60. On February 12 and 15, 2019, Rivera-Toro, Board Certified
    Behavior Analyst ("BCBA") evaluated GAJVM and prepared a
    Functional Behavior Assessment Report. (Docket Nos. 184-1
    ¶ 99; 184-17).

61. To prepare said report, Rivera-Toro reviewed BCBA Mrs.
    Riviere's Functional Behavior Assessment of GAJVM dated
    April 29, 2016. (Docket Nos. 184-1 ¶ 100; 184-17 at 1).

62. To conduct the report, GAJVM attended two evaluation
    sessions of February 12 and 15, 2019 at the Special
    Education Center. According to the report, Rivera-Toro
    tried to coordinate with Ms. Mercado that the second part
    of the evaluation be conducted in a neutral environment
    where the child could spend time in his educational
    facilities, but it was not possible "because he is not
    currently attending school and his home was not fit to
    receive visitors because it is under construction." (Docket
    Nos. 184-1 ¶ 103; 184-17 at 2).

63.   Therefore, Rivera-Toro prefaces her report that "the results of this evaluation may not show [GAJVM's] typical execution" and they may be "unable to identify treatments that at the present have proven to be useful." (Docket No. 184-17 at 2).

64.   Rivera-Toro concludes her report with various recommendations including the following:

> 1. [GAJVM] needs a structured and individualized program 1:1 for a 4-hour direct instruction, including one hour daily with small groups to work on social skills, increasing compliance, and group instructional control and independent life with an assistant. It must include functional, social, leisure, and adaptive behavior/self-care goals and objectives.
>
> 2. Including a behavior analysis (ABA) in his IEP 3-6 hours weekly, individually and/or with his teacher to assist in the management of aggressive behaviors, maladaptive behaviors, and prosocial and verbal behavior, as well as for guidance and alignment of the educational curriculum design.
>
> 3. The following strategies will be used to teach replacement behaviors: intensive direct instruction, prompt fading, teaching without errors using error correction procedures, presentation of tasks and instructions until independent response is achieved, teaching/practicing fluency (# of correct responses in X amount of time), teaching replacement behaviors (asking for help, asking for breaks, first "x", then ''y'', and saying "I don't know"), visual schedules and itineraries, and presentation of quick and interspersed tasks.
>
> 4. Provide Skinner's Verbal Behavior Training to his teachers to enable them to carry out the behavior modification plan and to increase verbal operants (mand, tact, echoic, intraverbal). Using the Verbal Behavior Milestones Assessment Placement

> Program (VMBAPP) which is a curriculum guide, to be
> integrated in the IEP to identify the student's
> strengths and weaknesses through a variety of
> critical skills for language and learning. It may
> guide the verbal behavior, social, play and leisure
> skills plan. This assessment program is based on
> the applied behavior analysis focused on Skinner 's
> verbal behavior analysis.

(Docket Nos. 184-1 ¶¶ 104-106; 184-17 at 8-9).

### G. **February 2019 Meetings to Prepare the 2018-2019 IEP**

65. On February 19, 2019, a COMPU meeting was held to discuss
    the Functional Behavioral Assessment Report and the 2018-
    2019 IEP design. (Docket Nos. 184-1 ¶ 107 and 184-19 at
    1).

66. According to the Minutes, a copy of the Functional
    Behavioral Assessment Report prepared by Rivera-Toro was
    given to the Parents at the February 19, 2019 meeting.
    (Docket Nos. 184-1 ¶¶ 108-109 and 184-19 at 2).

67. According to the Minutes, GAJVM's parents require the
    appropriate time to analyze and evaluate the report prior
    to discussing it. (Docket No. 184-19 at 2).

68. According to the Minutes, the discussion of the Function
    Behavioral Assessment Report and the 2018-2019 IEP will
    resume on February 22, 2019. (Docket Nos. 184-1 ¶ 110 and
    184-19 at 4).

69. The Parents refused to sign the Minutes because they disagree with them. (Docket Nos. 184-1 ¶ 111 and 184-19 at 4).

70. A COMPU meeting was held on February 22, 2019. (Docket No. 184-20).

71. The Parents presented evidence of medical documents but do not furnish a copy to the DOE. (Docket No. 184-1 ¶ 114).

72. Ms. Glenda Méndez ("Ms. Méndez"), the Parents' intercessor, states that GAJVM is currently at home without receiving ABA treatment in the educational area and therapies agreed to at the March 21, COMPU. Id. ¶ 117.

73. Rivera-Toro provides a summary and explanation of the Functional Behavior Assessment of GAJVM. (Docket Nos. 184-1 ¶ 119; 184-20 at 4).

74. GAJVM's parents reject the results of the Functional Behavior Assessment dated February 12 and 15, 2019, prepared by specialist Rivera-Toro. Ms. Mercado expressed the reason for her rejection by reading a previously prepared document, which she provided to the DOE. (Docket No. 184-1 ¶¶ 121-122).

75. The DOE states that it disagrees with the document because it finds that Rivera-Toro's evaluation was conducted as ordered by the Judge and her recommendations are consistent with the student's needs. Further, the DOE believes it can

provide a free appropriate public education placement. (Docket No. 184-1 ¶¶ 123-124).

76. Rivera-Toro states that she believes that certain tools of the Star-link Program and the Verbal Behavioral Milestones Assessment and Placement Program may be applied because they are based on ABA. Id. ¶ 126.

77. GAJVM's parents request a copy of the draft 2018-2019 IEP and it is provided to them. (Docket Nos. 184-1 ¶ 119; 184-20 at 3).

78. The draft 2018-2019 IEP prepared for the February 2019 COMPU meetings states the following regarding the use of ABA techniques:

> 2. Describe the strategies or methods that shall be utilized to modify the identified conduct:
> It's necessary to utilize strategies based on specialized models, in accordance to the diagnosis presented by [GAJVM]. The ABA focus shall be applied, designed by a certified specialist, in addition to integrating visual schemes, such as PECS and LINKS. […] The application of the ABA must be applied throughout the entire educational process (with backing from a professional certified in ABA). In the application of the ABA, the process and change in GAJVM shall be reviewed by means of specific measurement of his conduct, which shall establish the basis to redefine the goals drawn and the strategies utilized, every time that it is necessary. It's necessary that the psychologist offer the necessary consulting to the teacher and assistant, in addition to participating in the development of the applied ABA.
>
> […]

> Utilization of techniques and strategies based on
> ABA specialized models, according to the diagnosis
> presented by [GAJVM]. ABA focus shall be applied,
> designed by a certified specialist, integrating
> visual schemes, teaching techniques without error
> during discrete trials which alternate simple and
> complex short activities with longer ones in
> schedules with variable reinforcements beginning at
> VRI up to progression to aboard with chips, and
> error correction procedures shall be utilized.

(Docket No. 100-1 at 2-3),

79.  The proposed IEP also states that as to the Socio-Emotional
     services to be given to GAJVM, the student needs "varied
     strategies, including the specialized ones, such as ABA."
     Furthermore, the draft 2018-2019 IEP lists as a measurable
     goal that during the school year, GAJVM "by means of the
     use of the ABA methodology […] shall improve his responses
     for adaption, regulation, social skills, play and emotions
     that allow him to perform and interact in an adaptive
     manner in the social environment." Id. at 5.

80.  GAJVM's parents inform the parties that after reviewing
     the draft 2018-2019 IEP and consulting with their attorney,
     they reject the same because it does not comply with the
     Order issued by the Court nor with their child's needs.
     Id. ¶ 127.

81.  The DOE officials state that the deadline for completing
     the IEP is February 25, 2019. Id. ¶ 128.

82.  GAJVM's parents reiterate that they want the language of
     the 2017-2018 IEP approved on March 21, 2018 to be
     included. Id. ¶ 129.

83.  GAJVM's parents did not sign the Minutes of the meeting
     because DOE officials would not sign the ones prepared by
     Ms. Méndez. Id. ¶ 130.

84.  On February 25, 2019, Rivera-Toro, Mildred Acevedo-
     Concepcion (Special Education Facilitator for the
     Municipality of Lares), Yajaira Rivera-Muniz (Sepcial
     Education Teacher), and Yadira Padilla-Rodríguez (Social
     Worker of Arecibo SESC) held a meeting at the Special
     Education Service Center of Arecibo to draft a 2018-2019
     IEP proposal. (Docket Nos. 184-1 ¶ 137 and 184-22).

85.  According to the Minutes of said meeting, Rivera-Toro
     states that she is offering ABA intervention, training,
     and technical assistance. Further, she recommends keeping
     some applicable areas of the LINKS Curriculum in the draft
     IEP because certain LINKS tools are based on ABA's
     empirical evidence. Lastly, Rivera-Toro indicates that she
     would include the Verbal Behavior Milestones Assessment
     and Placement Program ("VBMAPP") curriculum guide for
     teaching verbal behavior. (Docket Nos. 184-1 ¶ 138 and 184-
     22 at 2).

86.    The Parents did not show up at the Special Education
       Service Center of Arecibo. Thus, pursuant to the Court's
       order, the DOE, could not resume the preparation of the
       IEP 2018-2019. (Docket No. 184 ¶ 139).

       **H. The proposed 2019-2020 IEP**

87.    On June 5, 2019, a COMPU meeting was held at the CSEE
       Arecibo to present a draft proposal of the 2019-2020 IEP.
       (Docket Nos. 184-1 ¶ 141 and 211-8 at 1).

88.    Mildred Acevedo-Concepción ("Acevedo-Concepción") informed
       GAJVM's parents of their rights, as established in the
       Special Education Procedures Manual, specifically those
       regarding the preparation of an IEP for their child.
       (Docket Nos. 184-1 ¶ 142 and 211-8 at 2).

89.    Acevedo-Concepción asks the Parents if they have any
       questions regarding their rights and they state that they
       do not. However, the Parents refused to sign the Receipt
       and Discussion Document on Parents Rights. (Docket Nos.
       184-1 ¶¶ 143-144 and 211-8 at 2).

90.    Dr. Amones-Gaud explains that the DOE has the
       responsibility to continue with the process established in
       the Circular Letter on Drafting Individualized Education
       Programs dated February 27, 2019 for students receiving
       Special Education in 2019-2020. It is the DOE's
       responsibility to prepare a draft of the proposed 2019-

2020 IEP. Accordingly, as a sound practice, the COMPU may develop a draft or proposal of the IEP before the meeting to facilitate the discussion. Lastly, Dr. Amones-Gaud clarified that the DOE must comply with the IDEA and its internal public policy regardless of the pending federal case. (Docket Nos. 184-1 ¶ 145 and 211-8 at 2-3).

91.   According to the Minutes, Dr. Amones-Gaud states that none of the participants in the COMPU, including GAJVM's parents, are allowed to be disrespectful. (Docket Nos. 184-1 ¶ 146 and 211-8 at 3).

92.   Ms. Méndez, on behalf of GAJVM's parents, emphasizes that the student requires ABA services and that the Parents are currently paying for him to receive said services at the Starbright Academy in Ponce. Thus, GAJVM's parents requested that the Court order DOE to reimburse them for these services. Ms. Méndez also reiterated the Parents' request that GAJVM be placed at Starbright Academy. (Docket Nos. 184-1 ¶¶ 147, 151 and 211-8 at 3).

93.   Dr. Amones-Gaud states that the DOE has an appropriate public free placement for GAJVM where the IEP can be implemented. (Docket Nos. 184-1 ¶ 153 and 211-8 at 4).

94.   Ms. Méndez claims that some officials have been cruel with GAJVM because he has not been provided a placement at Starbright Academy with equal conditions like other

students who have been placed at said school. (Docket Nos. 184-1 ¶ 154 and 211-8 at 4).

95.  In response, a DOE representative states that they have offered a placement with the necessary resources to provide an ABA specialist, a teacher who is specialized in Autism and certified in LINKS, a one-on-one classroom, and a service assistant. (Docket Nos. 184-1 ¶ 155 and 211-8 at 4).

96.  Mr. Valentín left the meeting at 10:57 a.m. When he returned, Ms. Méndez says that GAJVM's parents do not feel well enough to continue the meeting and then they left to consult with their attorney. (Docket Nos. 184 ¶ 156 and 211-8 at 4).

97.  When the Parents returned after consulting their attorney, they indicate that they were adjourning the meeting at 11:46 a.m. because they believed the purpose of the meeting was to determine GAJVM's placement. (Docket Nos. 184 ¶ 157 and 211-8 at 4).

98.  The Parents requested not to sign the Minutes of the June 5, 2019 meeting. (Docket Nos. 184 ¶ 158).

99.  According to the Minutes that were prepared, the Parents did not allow said Minutes to be read nor did they discuss the draft proposal of the IEP prepared for the meeting. (Docket No. 211-8 at 4)

100. A copy of the draft IEP for the 2019-2020 academic year
     was given to the Parents. (Docket No. 184-1 ¶ 161).

101. The proposed 2019-2020 IEP prepared by Rivera-Toro provides
     the following regarding the application of ABA:

> 2. Describe the strategies or methods that will be
> used to modify the identified behavior:
>> 1. Use techniques and strategies based on
>> specialized ABA models, according on [sic] the
>> diagnosis of [GAJVM]. The ABA approach, designed
>> by a certified specialist, will be applied. In
>> addition, visual cures, errorless teaching
>> techniques, through discrete trials alternating
>> simple and complex activities and short and long
>> activities in variable reinforcement schedules
>> starting VRI and progressing to token boards and
>> error correction procedures will be used.

(Docket Nos. 184-1 ¶¶ 162-163, 166 and 211-9 at 2-3).

102. Additionally, the draft 2019-2020 IEP states that as to
     the Socio-Emotional services to be provided, GAJVM needs
     ABA strategies. (Docket No. 184-1 ¶ 166).

103. On July 17, 2019, the DOE, through attorney Melissa
     Massheder, sent Plaintiffs a Proposal for Individualized
     Education Services School Year 2019-2020. (Docket No. 184-
     1 ¶ 168).

104. Part V of said Proposal, describes the following Education
     Services to be offered to GAJVM:

> a. The Special Education Program is organized
> through placement alternatives created as the
> students' education needs are identified. A
> modified self-contained secondary special
> education Autism classroom in One to One modality
> is created for G.J.V.M, candidate for Alternative

Certification with special education teacher. Said teacher must hold the certifications awarded by the Department of Education of Puerto Rico in the Special Education K-12 and Special Education in Autism categories. The teacher will receive training in the LINKS curriculum specialized in Autism, with training in Applied Behavior Analysis (ABA) strategies as well as in Crisis Management and Intervention (CPI). The identified classroom is spacious and will be divided and structured by service area according to the TEACCH method. Space will be provided in the classroom for the child to receive integrated therapy services provided by Provisional Remedy. The therapeutic services to be received in the school setting include speech and language therapy, occupational therapy, physical therapy, oral motor therapy, and psychological therapy. G.J.V.M will receive individualized instruction with reasonable accommodation, task modification, with emphasis on language, directed tasks with manipulatives, daily schedules, space for developing social skills, functional routines, and behavior strategies integrating ABA strategies and possibilities that develop independent living skills.

b. Among the educational strategies are:

i. Evidence-based practices such as: ABA principles, task analysis, Discrete Trial Training or DT, differential reinforcement system, visual supports, augmentative communication, modeling, peer teaching, pivotal response training or PRT, functional routines, intervention, and support to reinforce positive behavior, among others.

ii. Intervention Program-based practices such as: structured teaching, strategies based on specialized ABA models.

1. ABA Approach

a. Variable reinforcement schedules, visual supports and schedules, errorless learning strategies during discreet trials alternating simple and complex activities in variable

reinforcement schedules, use of token boards, error correction procedures, and use of Social Stories,
b. Use of positive and negative reinforcement consequence techniques, differential reinforcement and behavior measurement,
c. Help transfer techniques (prompts)
d. Use of task analysis strategies, the LINKS curriculum, and the Verbal Behavior Milestone Assessment and Placement Programs (VBMAPP)
e. Verbal Behavior Training (Skinner, 1959), such as Mand, tact, echoic and intraverbal and textual to promote teaching based on language and reducing behavior problems.
f. Use of response interruption and redirection of interfering behavior in order to reinforce and replace negative behavior with appropriate behavior.
g. Cooperation and tolerance of waiting training.
h. Functional Communication Training.

iii. G.J.V.M requires services and support that will be provided by a level 1 Special Services Assistant in the areas if mobility, hygiene, diet, and communication assistance. The assistant must be trained to work with students with Autism. In addition, the assistant must have training on Crisis Management and Intervention (CPI), First Aid, and must accompany the child at all times.

iv. Teacher will receive advice on ABA-based teaching strategies, weekly classroom visits by a behavioral specialist 4 to 6 hours a week.

(Docket Nos. 184-1 ¶ 169 and 184-26 at 2-3).

105. On July 31, 2019, Plaintiffs, through their legal counsel Attorney Borrés, sent an electronic communication to Attorney Massheder informing their decision to decline the DOE's Proposal for Individualized Education Services for the 2019-2020 School Year. (Docket No. 184-1 ¶ 171).

106. Said electronic communication explains that:

> Plaintiffs are <u>required</u> to decline the service
> proposal submitted on July 17, 2019 since there is
> no indication that it was designed by an ABA
> professional specifically for GAJVM, does not
> provide ABA services throughout the educational
> process, does not provide ABA backing throughout
> the educational process, and applies the Links
> program. In fact, the educational services section
> of the proposal states that the professor will be
> trained in Links, which, apparently, includes some
> training in ABA strategies. Among the educational
> strategies that are described as available are:
> evidence based practices incorporating ABA
> principles; other practices based on intervention
> programs, allegedly based on ABA, including the use
> of the Link curriculum, and consulting for the
> teacher on how to teach strategies with ABA focus.
> None of these 'strategies' amount to ABA services
> designed and supervised by an ABA professional for
> GAJVM provided throughout the educational process.

(Docket No. 184-1 ¶ 172).

**I.** **<u>Private Placement and the Starbright Academy</u>**

107. The DOE's "Manual of Special Education Procedures"

establishes the following:

> When the COMPU determines that the child's district
> of residence does not count with the service that
> the child needs, the zone supervisor or designated
> functionary in the school district shall request in
> writing the service in another district of the
> educational region, or of another region, to be
> able to place the student in the adequate service.
> If after having explored all the alternatives, in
> accordance to your knowledge, you find that the
> available services are not appropriate, you shall
> request in writing the technical assistance of the
> personnel for the educational region sending copy
> of the application for Technical Assistance for the
> Placement of Students (EE-07b) at the Central
> Level.

Faced with this request, a Supervisor from the Central Level and the personnel placed in the region may:

(a)   advise the COMPU about possible alternatives that were ignored and which should be considered;
(b)   justify the necessary resources to create the adequate service to take care of the student's need; or
(c)   Evaluate the purchase of educational services as alternative to serve the student.

When it is determined that it is necessary to request technical assistance for the placement of the student, it shall be clearly established in any form or certificate related to this matter, that said request does not constitute a commitment to purchase of purchases until it has not been established, with the help of personnel from the Central Level, that the Department of Education does not have available an appropriate public placement for the student.

On the other hand, the purchase of services at the private level is a determination that shall be revised annually, with each revision of the IEP. When the situation that originated the purchase of services has varied, When the situation that originated the purchase of services has varied, whether because the student's needs are not the same or because the school district has managed to identify an appropriate alternative for placement at the public level, this shall be considered by the COMPU to determine the student's future placement.

The purchase of a private service shall require the authorization of the Associate Secretary for Special Education. The school district shall be responsible for evidencing that the institution that is selected counts with:

- An appropriate curriculum at the child's level of performance
- An appropriate physical structure that permits the child's mobility

- Willingness to accept monitor visits
- Established procedures for the offering of the special education services in conformity with the parameters required by the Agency

[…]

If the father is not in agreement with the placement recommended for his son and a consensus is not reached, the father or the Department of Education may request an administrative hearing.

(Docket Nos. 167-1 ¶¶ 31-32, 36; 167-7 at 11-13; 184-1 ¶ 167).

108. The DOE, pursuant to the Parents' request, completed a Request for Technical Assistance 07-B with all the placement alternatives that have been offered to the student. However, said Request was not sent to the DOE'S central offices because GAJVM's parents did not present a Proposal from a private institution. (Docket No. 167-1 ¶ 35).

109. On the first week of November 2018, GAJVM's parents enrolled him at Starbright Academy for two hours of daily services with ABA therapeutic focus. (Docket No. 184-1 ¶ 11).

110. Until January 2019, GAJVM received services at Starbright under a specialized and individualized program prepared and supervised by BCBA-D Iris H. Pons under ABA methodology, for two hours a day, Monday through Friday. (Docket No. 184-30).

111. From November 2018 through December 2019, GAJVM's parents paid $14,820.00 for private ABA services at Starbright Academy. (Docket No. 167-11).

112. For the second semester of the 2019-2020 school year, GAJVM did not receive services at any place, due to the earthquakes in Puerto Rico and the Global Pandemic. (Docket No. 184-1 ¶ 12).

113. The DOE had a Contract in effect until June 30, 2020 with Starbright Academy to provide ABA services to special education students for whom the DOE did not have a placement in any of its schools. (Docket Nos. 167-1 ¶ 38; 226-3).

114. Pursuant to the forty-fourth section of Contract that was in effect between Starbright Academy and the DOE, the parties:

> [A]cknowledge that the services that will be offered by means of this contract do not constitute the functions of apposition available at this time in the effective classification and retribution plans of the existing regular personnel, since the Department does not count with sufficient human resources with the necessary academic preparation and professional experience, [sic] to offer the services to be contracted at this time.

(Docket No. 226-3 at 6.)

115. The DOE does not have a contract with Starbright Academy for the 2020-2021 school year. Id.

116. There are eighteen (18) special education students for whom
the DOE had no placement and are instead placed at
Starbright Academy. (Docket Nos. 167-1 ¶ 39-10 ¶ 14).

## IV.   ANALYSIS

As discussed above, the Court has previously rejected
Defendants' repeated contention that Plaintiffs failed to exhaust
administrative remedies. (Docket No. 63). Thus, the Court need not
readdress the issue at this juncture. Furthermore, the Court
necessarily has jurisdiction to determine whether the parties
complied with its previously issued orders.

### A. **The proposed 2019-2020 IEP would provide GAJVM a FAPE**

Despite the extensive factual and procedural background of
the case at bar, the essential question before the Court is whether
the latest proposed IEP for the **2019-2020** school year complies
with the IDEA and with this Court's previous orders at Docket Nos.
62 and 80. Specifically, the Court faces the following fundamental
"two-fold inquiry: Whether the state has complied with the
procedures of the Act, and whether the IEP developed through those
procedures is 'reasonably calculated to enable the child to receive
educational benefits.'" Kathleen H. v. Massachusetts Dep't of
Educ., 154 F.3d 8, 11 (1st Cir. 1998) (quoting Board of Educ. v.
Rowley, 458 U.S. 176, 206-07 (1982)). *See also* T.Y., 584 F.3d at
418.

Since the filing of the *Complaint*, Defendants have scheduled and held numerous COMPU meetings in hopes of approving an IEP. (Facts ¶¶ 50, 65, 70, 84, 87). Furthermore, the DOE retained the services of ABA-certified specialist Rivera-Toro to evaluate GAJVM, prepare a Functional Behavior Assessment Report and assist in the design of IEP proposals. (Facts ¶¶ 46, 53, 60-64). Although Plaintiffs objected to a wide range of specific occurrences at said COMPU meetings, as well as the findings of Rivera-Toro's Report, **the preponderance of the evidence shows that Defendants complied with the procedures required** by the IDEA and the Court for the development of an IEP. *See* Gonzalez v. Puerto Rico Dep't of Educ., 969 F. Supp. 801, 809 (D.P.R. 1997) (quoting Amann v. Stow Sch. Sys., 982 F.2d 644, 652 (1st Cir. 1992))(holding that a procedural infraction only constitutes a violation of the IDEA when there is "some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process or caused a depravation of educational benefits."). Plaintiffs **have not provided** any arguments, case law, or statutes to establish such procedural inadequacies in this case. In fact, it was *Plaintiffs* who refused to continue with the collaborative IEP process in various instances. (Facts ¶¶ 53, 80, 86, 95, 97). "The law ought not to abet parties who block assembly of the required team and then,

dissatisfied with the ensuing IEP, attempt to jettison it because of problems created by their own obstructionism." <u>Roland M. v. Concord Sch. Comm.</u>, 910 F.2d 983, 995 (1st Cir. 1990). Therefore, "it would be improper to hold [the] School District liable for the procedural violation of failing to have the IEP completed […] when that failure was the result of [the parents'] lack of cooperation." <u>MM ex rel. DM v. Sch. Dist. of Greenville Cty.</u>, 303 F.3d 523, 535 (4th Cir. 2002).

Plaintiffs' singular substantive critique to the latest proposed IEP is its supposed insufficient incorporation of ABA services in accordance with this Court's previous orders. Specifically, on November 13, 2018, the Court granted Plaintiffs' request for a preliminary injunction and specified that the final IEP must be "**designed by an ABA-certified professional, apply ABA services, and count with the professional's backing throughout the education process so that plaintiffs' child may receive a FAPE**." (Fact ¶ 43). On January 28, 2019, the Court reiterated said requirements when it ordered the parties to prepare a new IEP "designed by Joan Rivera Toro [a certified ABA professional], that applies ABA services throughout the educational process." (Fact ¶ 58).

The proposed 2019-2020 IEP, requires that the teacher receive training and advice in ABA strategies as well as "weekly classroom visits by a behavioral specialist 4 to 6 hours a week." <u>Id.</u>

Moreover, it details the specific nature of the ABA approach to be used considering GAJVM's diagnosis and specific needs. <u>Id.</u>[2] An analysis of Plaintiffs' filings evinces that they have erroneously interpreted the Court's orders as requiring that an ABA-certified professional directly provide ABA services to GAJVM **at all times**. In Plaintiffs' own words, their position is that:

> Including ABA (behavior analysis) in the IEP for a few hours implies that, the IEP would not provide ABA throughout the educational process, that it would be limited to a few hours weekly, and that ABA would be to attend the behavior a few hours a week and not the entire process. Other than the few hours a week, there is no indication that the specialist would be available to provide back up throughout the education process.

(Docket No. 221-1 ¶ 99). Albeit with GAJVM's best interest at heart, Plaintiffs have mistakenly inserted additional, onerous conditions that are simply not required by the plain text of the order nor supported by the IDEA. *See* <u>Lessard</u>, 518 F.3d at 24. (finding that an IEP need not provide "an ideal level of educational benefit, in order to survive judicial scrutiny."). The proposed 2019-2020 IEP which was offered to Plaintiffs on July 17, 2019 was (1) designed by ABA-certified specialist Rivera-Toro; (2) details how ABA services will be implemented; and (3) specifies

---

[2] Notably, throughout the IEP process, Plaintiffs have reiterated that they want the language of the 2017-2018 IEP approved on March 21, 2018 to be included into any future IEPs. (Fact ¶ 82). However, a comparison of the draft IEPs for 2018-2019 and 2019-2020 shows that much of the same language was included in the latest proposed versions (Facts ¶ 24, 78, 101). In comparison, the latest proposed 2019-2020 IEP furnished to Plaintiffs on July 17, 2019 goes even further than the previously approved IEP. (Fact ¶ 104).

the nature and hours of the weekly professional support the ABA-certified-specialist will provide in compliance with this Court's orders. (Fact ¶ 104). The 2019-2020 IEP proposal also contains the fundamental requirements imposed by the IDEA and the applicable case law. *See* 20 U.S.C.A. § 1414 (d)(1)(A).

Further, the Court finds that the prior draft IEP for 2018-2019 discussed at the February 22, 2019 COMPU meeting *also* complied with previous Court orders and the IDEA. (Fact ¶ 78). Said draft IEP was prepared by ABA-certified specialist Rivera-Toro after having **personally evaluated** GAJVM and conducting a Functional Behavior Assessment Report with recommendations for his specific needs. (Facts ¶¶ 60-64).

Throughout the process, Plaintiffs have insisted that all IEPs contain the language regarding ABA services that was approved for the 2017-2018 IEP at the March 21, 2018 COMPU meeting. (Fact ¶ 82). The following is a side-by-side comparison of the ABA requirements established by the approved 2017-2018 IEP and the proposed 2018-2019 IEP:

| The 2017-2018 IEP approved at the March 21, 2018 COMPU meeting (Fact ¶ 24) | The draft 2018-2019 IEP prepared for the February 22, COMPU meeting (Fact ¶ 78) |
|---|---|
| The ABA focus shall be applied, designed by a certified specialist […] The application of the ABA must be applied throughout the entire educational process (with backing from a professional certified in ABA). […] It's necessary that the psychologist offer the necessary consulting to the teacher and assistant, in addition to participating in the development of the applied ABA. | The ABA focus shall be applied, designed by a certified specialist […] The application of the ABA must be applied throughout the entire educational process (with backing from a professional certified in ABA). […] It's necessary that the psychologist offer the necessary consulting to the teacher and assistant, in addition to participating in the development of the applied ABA. […] Utilization of techniques and strategies based on ABA specialized models, according to the diagnosis presented by [GAJVM]. ABA focus shall be applied, designed by a certified specialist. |

Evidently, the draft 2018-2019 IEP not only included *identical* provisions requiring ABA services throughout GAJVM's education but even went *further* than the previous year's IEP. Therefore, **by February 22, 2019,** the DOE had complied with its procedural and substantive obligations under the IDEA by crafting an IEP that would provide GAJVM with a FAPE. Moreover, the DOE continued with a collaborative IEP process for the 2019-2020 school year, providing even more detail regarding ABA services.

**B. <u>Limited Reimbursement and Compensatory Education are
   Warranted</u>**

The First Circuit has held that when parents make the
"unilateral choice to abandon the collaborative IEP process
without allowing that process to run its course […] [they are]
precluded from obtaining reimbursement for the costs of private
school placement." <u>Five Town</u>, 513 F.3d at 289-90. In this case,
there is ample evidence on the record to suggest that the failure
of both the 2018-2019 and 2019-2020 proposed IEPs to provide FAPE
for GAJVM is attributable to Plaintiffs unilateral abandonment of
the collaborative process and their "ABA/Starbright Academy or
nothing" approach.

However, the initial draft 2018-2019 IEP offered to
Plaintiffs on April 5, 2018, *i.e.* prior to the filing of the
*Complaint*, failed to adequately address GAJVM's need for ABA
services. (Facts ¶¶ 31-36). In other words, from **April 2018 through
February 2019** the DOE did not comply with its obligation to provide
GAJVM with a FAPE as required by the IDEA. In the absence of a
FAPE, on the first week of November 2018, Plaintiffs enrolled GAJVM
in Starbright Academy. (Fact ¶ 109). Despite having been offered
an appropriate IEP by February 22, 2019, Plaintiffs maintained
GAJVM enrolled at Starbright Academy until December 2019.
Accordingly, Plaintiffs may **only** receive reimbursement for private
school costs during the period of time in which the DOE had

provided an insufficient IEP, specifically from **November 2018 through February 2019**.

Similarly, GAJVM is **only** entitled to compensatory education for the period in which he was "**effectively denied a FAPE.**" Five Town, 513 F.3d at 290 (citing Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., 321 F.3d 9, 18 (1st Cir.2003)). Thus, GAJVM shall receive eleven (11) months of compensatory education to recompense for the period from April 2018 through February 2019 in which he was effectively denied a FAPE.

## C. Private School Placement

Plaintiffs' request for private school placement at the Starbright Academy is not supported by law, fact, or any administrative record. Private school placement is **only** considered proper "when a public-school system has defaulted on its obligations under the Act." Carter, 510 U.S. at 11. Thus, although private school placement is certainly an alternative in some circumstances, neither the IDEA nor the DOE's internal regulations create a right to private school placement. *See* 2000 U.S.C.A. § 1412(a)(10)(B)(i); Fact ¶ 108. Plaintiffs allege that the DOE's contract with Starbright Academy is evidence of its inability to provide full-time ABA services. (Docket No. 231). The contract, which is no longer in effect, *does* state that Starbright Academy will provide services the DOE cannot because it lacks "sufficient human resources with the necessary academic preparation and

professional experience, [sic] to offer the services to be contracted at this time." (Facts ¶¶ 115-116). However, it is a leap to interpret this clause as meaning that the DOE is **incapable of providing any of the contracted services**. Plaintiffs' have thus failed to establish that (1) the DOE cannot provide GAJVM ABA services; (2) the Starbright Academy is the only viable alternative; and (3) GAJVM has a right to be placed at said school. Notably, the Court had previously denied Plaintiffs' request for private school placement on January 28, 2019 and cautioned that parents cannot unilaterally select their child's placement under the IDEA. (Fact ¶ 59).

Lastly, Plaintiffs request for a "stay put" order requiring the DOE to pay for services at Starbright Academy is equally unsubstantiated. (Docket No. 115 at 19). The IDEA requires that:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C.A. § 1415(j). In this case, the "then-current educational placement" for GAJVM would be CADEI School, not Starbright Academy. (Facts ¶¶ 9 and 38). The record shows that the parties have not reached an agreement regarding a placement for

GAJVM at Starbright Academy. Therefore, a stay put order requiring Plaintiffs' preferred placement is improper.

### D. **Attorneys' Fees**

The IDEA gives courts the discretion to award reasonable attorneys' fees to the parent(s) of a child with disabilities when they are a prevailing party. 20 U.S.C.A. § 1415(i)(3)(B). To be considered a prevailing party, the party must have obtained "at least some relief on the merits of [their] claim." Gonzalez, 969 F. Supp. at 816 (D.P.R. 1997) (quoting Farrar v. Hobby, 506 U.S. 103, 111 (1992)). Because the Court has granted in part Plaintiffs' request for reimbursement and compensatory education, Plaintiffs have "received some relief for a significant issue in this litigation" and are thus entitled to *reasonable* attorneys' fees.

### V.   CONCLUSION

"Jurists are not trained, practicing educators." Roland, 910 F.2d at 989. Accordingly, "[c]ourts should be hesitant to impose their views of what constitutes proper educational practice" on the state. Gonzalez, 969 F. Supp. at 814 (citing Rowley, 458 U.S. at 208). For the foregoing reasons, the Court finds that the proposed 2019-2020 IEP would provide GAJVM with a FAPE in compliance with the IDEA and the Court's previous orders but declines to determine appropriate placement for GAVJM for the 2020-2021 school year. The Court **DENIES IN PART** Plaintiffs' *Motion for*

*Summary Judgment* at Docket No. 167 and **GRANTS IN PART** Defendants'
*Motion for Summary Judgment* at Docket No. 184

As a new school year is upon on us, a new IEP must be drafted.
Given the time that has elapsed, the insufficient record and the
constraints caused by the Covid-19 pandemic, the Court is not in
a position to determine an appropriate placement for GAJVM, even
on an interim basis. The Court **GRANTS IN PART** Plaintiffs' request
for permanent injunction as follows:

- The parties are hereby **ORDERED** to meet and approve a
  2020-2021 IEP for GAJVM by **September 8, 2020** that
  incorporates ABA services and is devised with the
  assistance of an ABA-certified professional. If the
  Department does not have an ABA-Certified professional
  on hand, then it shall contract with one.

- If the parties are unable to agree on an IEP or an
  appropriate placement for GAJVM for the 2020-2021
  school year, the parties are **ORDERED** to **exhaust the
  administrative remedies** available under the IDEA. *See*
  20 U.S.C.A. § 1415.

Given the health and safety concerns posed by the Covid-19
pandemic, any evaluations and meetings may be held by video or
telephonic conference.  See 34 C.F.R. § 300.328. The parties are
called to set aside their differences and reminded of their
obligation to **collaboratively and expeditiously** prepare a 2020-

2021 IEP that meets GAJVM's needs in compliance with the IDEA and the DOE's regulations.

Additionally, the DOE is hereby **ORDERED** to:

- Reimburse Plaintiffs for the private school costs incurred from November 2018 through February 2019 totaling **Three Thousand Twenty Dollars ($3,020.00);** and

- Provide eleven (11) months of compensatory education corresponding to the period from April 2018 through February 2019 in which GAJVM was not offered an IEP that would provide him with a FAPE.

Lastly, Plaintiffs **SHALL** file an itemized claim for their attorney's fees within **fourteen (14) days.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of August 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge